# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| BLAINE TORY BOKEN,<br><br>        Plaintiff,<br>vs.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>        Defendant. | No. C14-3066-LTS<br><br>**MEMORANDUM<br>OPINION AND ORDER** |

_____

Plaintiff Blaine Boken seeks judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying his application for Social Security Disability benefits (DIB) and Supplemental Security Income benefits (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.* (Act). Boken contends that the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that he was not disabled during the relevant time period. For the reasons that follow, the Commissioner's decision will be reversed and remanded.

## I.    BACKGROUND

Boken was born in 1961 and has a GED. AR 228, 269. He has past relevant work as a construction worker, industrial truck operator and house repairer. AR 285. Boken applied for DIB on April 18, 2011, and SSI on May 23, 2011, alleging disability since February 2, 2011. AR 195-96, 197-203. He alleged disability due to mental health issues (primarily bipolar disorder, anxiety and depression), partial blindness and COPD. AR 43, 79.

Boken's applications were denied initially and on reconsideration. AR 135-38, 142-52. Boken then requested a hearing before an Administrative Law Judge (ALJ). AR. 153-54. ALJ David G. Buell conducted a hearing on April 8, 2013, during which Boken and a vocational expert (VE) testified. AR 39-76. On May 6, 2013, the ALJ issued a decision in which he found that Boken was not disabled. AR 19-38. The Appeals Council denied Boken's request for review on September 2, 2014. AR 1-6. The ALJ's decision thus became the final decision of the Commissioner. AR 1; 20 C.F.R. § 404.981.

Boken filed a complaint (Doc. No. 2) in this Court on October 28, 2014, seeking review of the Commissioner's decision.[1] The parties have briefed the issues and the matter is now fully submitted.

## II. DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), *accord* 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when, due to his physical or mental impairments, the claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§

---

[1] This case was initially assigned to United States District Judge Mark W. Bennett and referred to me, as a United States Magistrate Judge, for the filing of a report and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Upon my appointment as a United States District Judge, the case was reassigned to me. As such, this order constitutes this court's final disposition of the case.

423(d)(2)(A), 1382c(a)(3)(B). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices or other factors, the ALJ will still find the claimant not disabled. 20 C.F.R. §§ 404.1566(c)(1)-(8), 416.966(c)(1)-(8).

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Id.* §§ 404.1520, 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). "Substantial" work activity involves physical or mental activities. "Gainful" activity is work done for pay or profit. 20 C.F.R. §§ 404.1572(a), 404.1572(b).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; see 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).

The ability to do basic work activities is defined as having "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; (2) capacities for seeing, hearing and speaking; (3) understanding, carrying out and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§

404.1521(b)(1)(6), 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will determine its medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of his past relevant work. If the claimant cannot do his past relevant work then he is considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). Past relevant work is any work the claimant has done within the past 15 years of his application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. *Id.* § 416.960(b)(1). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing the evidence the Commissioner will use to determine claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20

C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *Id.* If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must show not only that the claimant's RFC will allow him to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make the adjustment, then the Commissioner will find the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At step five, the Commissioner has the responsibility of developing the claimant's complete medical history before making a determination about the existence of a disability. *Id.* §§ 404.145(a)(3), 416.945(a)(3). The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

If after these five steps the ALJ has determined the claimant is disabled but there is medical evidence of substance use disorders, the ALJ must decide if that substance use is a contributing factor material to the determination of disability. 42 U.S.C. §§ 423(d)(2)(C). The ALJ must then evaluate the extent of the claimant's limitations without the substance use. *Id.* If the limitations would not be disabling, then the disorder is a contributing factor material to determining disability and the claimant is not disabled. 20 C.F.R. §§ 404.1535, 416.935.

## III. THE ALJ'S FINDINGS

The ALJ made the following findings:

(1) The claimant meets the insured status requirements of the Social Security Act through September 30, 2015.

(2) The claimant has not engaged in substantial gainful activity since February 2, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

(3) The claimant has the following severe impairments: COPD; monocular vision; adjustment disorder with disturbance of conduce (sic) and mood; major depressive disorder, recurrent, in remission; mood disorder, NOS; bipolar disorder, NOS; anxiety disorder, NOS; Cluster B features; history of alcohol abuse with probable dependence, in partial remission (20 CFR 404.1520(c) and 416.920(c)).

(4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

(5) After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following additional limitations: never climb ladders, ropes or scaffolds; must work within an indoor, temperature-controlled environment without airborne irritants; must avoid hazards on the left side such as moving machinery due to monocular right vision and loss of depth perception; simple, routine, repetitive, unchanging work tasks which involve no close attention to detail, no use of independent judgment and no contact with the public.

(6) The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

(7) The claimant was born on February 19, 1961 and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

(8) The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

(9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

(10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

(11) The claimant has not been under a disability, as defined in the Social Security Act, from February 2, 2011, through the date of this decision (20 CFR 404-1520(g) and 416.920(g)).

AR 22-34.

## IV. THE SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit

explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely

because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## V. DISCUSSION

Boken contends the ALJ's decision is not supported by substantial evidence because (1) the ALJ failed to weigh the medical evidence properly and (2) the ALJ did not evaluate Boken's credibility correctly. I will address these arguments separately.

### A. *The Medical Evidence*

#### 1. *Applicable Standards*

The Social Security regulations state, in relevant part:

> *Treatment relationship*. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). What this means is that a treating physician's opinion is generally given controlling weight, but is not inherently entitled to it. *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006). A treating physician's

9

opinion "does not automatically control or obviate the need to evaluate the record as [a] whole." *Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007). But that opinion will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. *Hacker*, 459 F.3d at 937.

When a treating physician's opinion is entitled to controlling weight, the ALJ must defer to the physician's medical opinions about the nature and severity of an applicant's impairments, including symptoms, diagnosis and prognosis, what an applicant is capable of doing despite the impairment, and the resulting restrictions. 20 C.F.R. § 404.1527(c)(2); *Ellis v. Barnhart*, 392 F.3d 988, 995 (8th Cir. 2005). The ALJ must "always give good reasons" for the weight given to a treating physician's evaluation." 20 C.F.R § 404.1527(c)(2); *see also Cline v. Colvin*, 771 F.3d 1098, 1103 (8th Cir. 2014). "A treating source's opinion will be given controlling weight only if the ALJ finds that it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and … not inconsistent with the other substantial evidence' in the record." *Blackburn v. Colvin*, 761 F.3d 853, 860 (8th Cir. 2014) (quoting 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)). A treating physician's conclusion that an applicant is "disabled" or "unable to work" addresses an issue that is reserved for the Commissioner and therefore is not a "medical opinion" that must be given controlling weight. *Ellis*, 392 F.3d at 994.

"In deciding whether a claimant is disabled, the ALJ considers medical opinions along with 'the rest of the relevant evidence' in the record." *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007) (quoting 20 C.F.R. § 404.1527(b)). "Medical opinions" are defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2),

416.927(a)(2). Other relevant evidence includes medical records, observations of treating physicians and others, and an individual's own description of his limitations. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). "Some medical evidence 'must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace.'" *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) (quoting *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001)). "Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a state agency medical . . . consultant." 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii).

### 2. *Treating source opinions*

The record contains medical evidence from two treating sources, Vrinda Agrawal, M.D., and Samuel Clinch, M.D. Both physicians treated Boken through the Veterans Administration (VA).

#### a. *Dr. Agrawal*

Dr. Agrawal, an internist, began treating Boken on March 1, 2011. AR 265. She completed a multiple impairment questionnaire following an examination on October 3, 2011, diagnosing COPD, anxiety disorder, major depression and tobacco abuse. AR 739. Dr. Agrawal stated that Boken's symptoms included stress, anxiety, shortness of breath and a history of suicidal intent. AR 740. She opined that in an 8-hour workday, Boken could sit for 8 hours, could stand/walk for 5 hours, would need to get up as needed, could lift/carry 5-10 pounds frequently and could occasionally lift/carry over 50 pounds. AR 741-42. Dr. Agrawal also opined that Boken would have no limitations using his upper extremities during an 8 hour work-day. AR 742.

11

Dr. Agrawal found that Boken was capable of handling moderate stress. AR 744. She noted that Boken would need to take breaks once per day if needed, but only for a few minutes. AR 744. She indicated that Boken would likely be absent from work because of his impairments about once a month. AR 745. In responding to a question about other limitations that would affect Boken's ability to work at a regular job on a sustained basis, Dr. Agrawal noted (a) psychological limitations and (b) shortness of breath secondary to lung condition and history of smoking. *Id.*

On March 26, 2012, Dr. Agrawal signed a statement in which she expressed an opinion that Boken was totally disabled without consideration of any past or present drug or alcohol use. AR 999.

### b. Dr. Clinch

Dr. Clinch, a psychiatrist, began treating Boken in November of 2011. AR 1013. He completed a psychiatric/psychological impairment questionnaire on January 5, 2012. AR 748. Dr. Clinch reported a Global Assessment of Functioning (GAF) score[2] of 60 and listed several diagnoses, including mood disorder, anxiety disorder, panic disorder and alcohol dependency in partial remission. AR 748. In identifying clinical findings that supported his diagnoses, Dr. Clinch listed, among other things, substance dependence, recurrent panic attacks, mood disturbance, suicidal ideation, hostility and irritability. AR 749. Dr. Clinch also noted that Boken was making progress as of late and had made plans to return to school in order to find employment. AR 748.

---

[2] A GAF score represents a clinician's judgment of an individual's overall ability to function in social, school, or occupational settings, not including impairments due to physical or environmental limitations. *See* American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 34 (4th ed.) (DSM-IV). A GAF score of 51-60 indicates the individual has moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers). *Id.*

Dr. Clinch reported that Boken had panic attacks every other day and that he had been hospitalized because of his impairments three times during the previous six to nine months. AR 750. In assessing Boken's limitations, Dr. Clinch noted marked limitations in (a) the ability to complete a normal workweek without interruptions, (b) the ability to respond to changes in the work setting and (c) the ability to set realistic goals or make plans independently. AR 751-53. Dr. Clinch found moderate limitations in Boken's ability to (a) understand and remember instructions, (b) carry out detailed instructions, (c) sustain an ordinary routine without supervision, (d) work with others without being distracted by them, (e) make simple work related decisions, (f) accept instructions and respond appropriately, (g) ask simple questions, (h) behave socially appropriately and follow basic standards of cleanliness and neatness, (i) be aware of hazards and respond appropriately and (j) travel or use public transportation. *Id.*

Dr. Clinch also reported that Boken experienced episodes of decompensation in work or work-like settings which caused him to withdraw from the situation or experience exacerbation of symptoms. AR 753. Dr. Clinch indicated that Boken could not tolerate even low work-related stress, noting he had suffered recurrent panic attacks despite pharmacotherapy. AR 754. Finally, Dr. Clinch opined that Boken would miss work more than three times each month due to his impairments. AR 755.

In October 2012, Dr. Clinch prepared an additional, narrative opinion in which he stated that Boken continued to struggle with severe anxiety and depressive symptoms. AR 1013. He reported that Boken was compliant with treatment and was making efforts to take online courses in hopes of finding gainful employment. *Id.* However, Dr. Clinch also noted that Boken was continuing "to have difficulty with concentration and persistent low mood with high anxiety" and that his symptoms had persisted for more than six months. *Id.* Dr. Clinch expressed doubt about Boken's ability to obtain employment, as he "has barely been able to complete his work load at school." *Id.*

13

### 3. *State agency psychologists*

Boken's records were reviewed by state agency psychologists Aaron Quinn, Ph.D., and Myrna Tashner, Ed.D. Dr. Quinn prepared a mental RFC assessment dated October 3, 2011. AR 87-89. He found that Boken was not significantly limited with regard to various abilities relating to concentration and persistence. AR 87-88. However, Dr. Quinn determined that Boken had moderate limitations with regard to his ability to (a) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, (b) interact appropriately with the general public, (c) accept instructions and respond appropriately to criticism from supervisors, (d) get along with coworkers or peers, (e) maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, (f) respond appropriately to changes in the work setting and (g) set realistic goals or make plans independently of others. AR 88-89. Dr. Quinn found that Boken was only partially credible because he reported having difficulty getting along with others but his treatment records indicated otherwise. AR 89. He also found that Boken had not been treatment compliant and noted that his condition improved when he was compliant. AR 89. Dr. Quinn concluded that Boken was able to work, within the limitations he noted, but cautioned that Boken would have some "work-based difficulties at times with pace, interpersonal functioning, judgment and change." *Id.* He stressed that Boken "will benefit from superficial interactions." *Id.*

Dr. Tashner reviewed Boken's records and prepared a mental RFC assessment dated January 5, 2012. AR 116-19. She made essentially the same findings as Dr. Quinn. *Id.* Like Dr. Quinn, she found Boken to be only partially credible and noted that his condition improved when he was treatment compliant. AR 118. Dr. Tashner also found that Boken was able to work but would have work-based difficulties with pace, interpersonal functioning, judgment and change. *Id.*

### 4. The ALJ's reasoning

The ALJ noted that he evaluated all opinion evidence in accordance with the applicable regulations and rulings. AR 26. He then stated that he afforded significant weight to Dr. Agrawal's opinion concerning Boken's ability to sit, stand, lift, carry and attend work. AR 32. However, the ALJ rejected Dr. Agrawal's opinion that Boken was totally disabled without consideration of any drug or alcohol usage. *Id.* The ALJ stated that this opinion was inconsistent with limitations previously assessed by Dr. Agrawal and, in any event, addressed an issue that is reserved to the Commissioner. *Id.*

As for Dr. Clinch, the ALJ stated that he afforded some weight to his opinion that Boken would experience "no more than moderate limitation of function." *Id.* However, the ALJ did not address, or even acknowledge, Dr. Clinch's opinion that Boken suffered marked limitations in his abilities to (a) complete a normal workweek without interruptions from psychologically based symptoms, (b) respond to changes in the work setting and (c) set realistic goals or make plans independently.[3] *Id.* Next, the ALJ stated that he gave little weight to Dr. Clinch's opinion concerning absenteeism, stating that it lacked basis either from observations or treatment notes and was inconsistent with Dr. Agrawal's opinion. *Id.* In addition, the ALJ gave no weight to Dr. Clinch's October 2012 opinion that Boken's struggle to keep up with online course work suggested that he would be unable to maintain work-like activities. *Id.* The ALJ found that this opinion did not consider "the simple, repetitive and unchanging occupations" that the VE identified. *Id.*

The ALJ afforded great weight to the state agency psychological assessments, finding them to be consistent with Boken's treatment history. *Id.* The ALJ also gave some weight to the state agency medical assessments, but found the limitations outlined

---

[3] A "marked" limitation is one that "effectively precludes the individual from performing the [specified] activity in a meaningful manner." AR 750.

15

by Dr. Agrawal to be more consistent with the medical record when considered as a whole. *Id.*

   5.   *Analysis*

Boken's argument focuses on the mental health opinions of record. He contends the ALJ failed to give appropriate weight to the opinions of Dr. Clinch, his treating psychiatrist, and instead gave too much weight to the opinions of non-examining state agency psychologists. The Commissioner argues that the ALJ provided valid reasons, grounded in substantial evidence, for giving only limited weight to Dr. Clinch's opinions. Specifically, the Commissioner notes the ALJ stated that Dr. Clinch's opinions were unsupported by observations and treatment notes, were contradicted by Dr. Agrawal (another treating source) and did not anticipate the "simple, repetitive and unchanging occupation identified via vocational testimony." AR 32.

I find that the ALJ's discussion of Dr. Clinch's opinions fell woefully short of the analysis necessary to support the rejection of a treating source's opinions. Indeed, I am not entirely sure the ALJ accurately comprehended Dr. Clinch's opinions. As noted above, the ALJ reported that Dr. Clinch found Boken "would generally experience no more than moderate limitation of function." AR 32. However, Dr. Clinch made express findings of "marked" limitations with regard to three separate categories of functioning. AR 752-53. The ALJ either failed to notice those findings or chose to ignore them. Either way, the ALJ provided no explanation as to why it was appropriate to afford no weight to a treating psychiatrist's findings of marked functional limitations.

As for the alleged contradiction between Dr. Agrawal's opinion and Dr. Clinch's opinion, the only cited area of potential disagreement pertains to absenteeism. AR 32. Dr. Agrawal found that Boken would likely be absent from work because of his impairments about once a month, while Dr. Clinch found that Boken would miss work more than three times a month. AR 745, 755. However, Dr. Agrawal and Dr. Clinch

16

specialize in different areas of medicine. Dr. Agrawal is an internist. AR 746. Although her questionnaire addressed some mental health issues, it understandably focused on Boken's physical limitations. AR 739-46.

Dr. Clinch, by contrast, is a psychiatrist. AR 755. In his questionnaire, he identified 13 clinical findings, based on his own mental status examinations, that formed the basis of his diagnoses. AR 749. He then described Boken's primary symptoms as including high anxiety with panic attacks every other day. AR 750. After rating Boken's level of impairment as to various mental functions, Dr. Clinch provided his opinion that Boken would be absent from work more than three times a month due to his impairments or treatment for his impairments. AR 751-55.

It is hardly surprising that an internal medicine physician, focused primarily on the patient's physical impairments, and a psychiatrist might reach different conclusions about the patient's expected absenteeism. Moreover, even if a treating internist and a treating psychiatrist actually disagree about the effects of the patient's mental impairments, the psychiatrist's opinion would normally be entitled to greater weight. *See, e.g.*, 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."). At minimum, the ALJ should have explained why he chose to favor the opinion of an internist over that of a psychiatrist with regard to the absenteeism effects of Boken's mental impairments.

Finally, and having carefully reviewed Dr. Clinch's contemporaneous treatment notes, I disagree with the ALJ's generalized statement that those notes are inconsistent with Dr. Clinch's opinion about absenteeism. Dr. Clinch had examined Boken four times over a seven-week period as of January 5, 2012 (the date Dr. Clinch signed the questionnaire). AR 755, 967-80. In his treatment notes, Dr. Clinch reported Boken's recent history of three separate psychiatric hospitalizations and high risk suicidal behavior secondary to very poor coping skills. *See, e.g.*, AR 975, 977-79. Dr. Clinch also

17

reported, and attempted to resolve through medication, Boken's recurrent panic attacks. *See, e.g.*, AR 973, 979. As of the date Dr. Clinch signed the questionnaire, he noted that Boken was still experiencing panic attacks every other day. AR 967. I find nothing in Dr. Clinch's notes that precludes, or even undercuts, Dr. Clinch's opinion that Boken's mental impairments would cause him to miss work more than three times per month. AR 755.

As noted earlier, an ALJ may conclude under appropriate circumstances that a treating source's opinion is entitled to little or no weight. *See, e.g.*, 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). However, the ALJ must "always give good reasons" for the weight given to a treating source opinion. *Cline*, 771 F.3d at 1103. Here, I find that the ALJ discredited Dr. Clinch's opinions in a cursory fashion that failed to satisfy this requirement. Perhaps good reasons exist, but the ALJ did not share them. Instead, the ALJ disregarded (without comment) Dr. Clinch's findings of marked limitations, relied on a dubious alleged inconsistency between Dr. Clinch's and Dr. Agrawal's opinions and declared Dr. Clinch's opinions to be inconsistent with his treatment notes without explaining the alleged inconsistency. This falls far short of providing "good reasons" for discounting the opinions of a treating source in favor of opinions provided by state agency consultants who did not examine Boken.

Because the ALJ failed to provide good reasons for the limited weight afforded to Dr. Clinch's opinions, the ALJ's resulting RFC findings are not supported by substantial evidence on the record as a whole. Remand is necessary for the ALJ to re-weigh the medical evidence and provide good reasons for the weight given to the opinions of record.

### B.     *Subjective Allegations*

Boken contends that the ALJ failed to provide good reasons for discrediting his subjective allegations. Because I have determined that remand is necessary for the purpose of re-weighing the medical evidence, I will direct that on remand, the ALJ

18

reconsider Boken's credibility, as well. If, for example, the ALJ determines that Dr. Clinch's opinions are entitled to controlling weight, or at least greater weight, such a finding may tend to make Boken's subjective allegations more credible. Thus, the ALJ's decision on remand shall specifically address Boken's credibility and provide reasons for the ALJ's credibility findings.

## VI.    CONCLUSION

For the reasons set forth herein, the Commissioner's determination that Boken was not disabled is **reversed and remanded** for further proceedings consistent with this order. Judgment shall enter in favor of Boken and against the Commissioner.

On remand, the ALJ must re-weigh the medical evidence and provide good reasons for the weight given to the opinions of record. The ALJ shall also re-evaluate Boken's credibility and make any additional findings necessary to the sequential evaluation process.

**IT IS SO ORDERED.**

**DATED** this 19th day of February, 2016.

_____
LEONARD T. STRAND
UNITED STATES DISTRICT JUDGE